42 N.J. Super. 297 (1956)
126 A.2d 219
POINT PLEASANT MANOR BUILDING CO., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ARTHUR F. BROWN & FRANCES G. BROWN, HIS WIFE; CLARENCE J. SAFRANIK & DOROTHY SAFRANIK, HIS WIFE; ROBERT W. TAYLOR & EVELYN TAYLOR, HIS WIFE; LEON LaBODA & ROSE MAY LaBODA, HIS WIFE; THE TOWNSHIP OF BRICK, OCEAN COUNTY, AND THE BOARD OF EDUCATION OF THE TOWNSHIP OF BRICK, OCEAN COUNTY, A BODY CORPORATE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 1956.
Decided October 29, 1956.
*300 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Edward W. Haines argued the cause for defendants-respondents Township of Brick and the Board of Education of the Township of Brick (Mr. Edward W. Haines and Mr. Harold A. Schuman, attorneys).
Mr. Leo Rosenblum argued the cause for plaintiff-appellant (Mr. Robert J. Riddle, attorney; Mr. Abraham Natovitz, of counsel).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Plaintiff appeals from a declaratory judgment adjudicating that a certain area in Brick Township, 2 1/4 acres in size, a part of a large tract of land once wholly owned by plaintiff, was dedicated by plaintiff for the use of the public. The dedication has never been accepted. Of the defendants to the cause, none seem to have appeared except the Township of Brick and the township's board of education. The case was tried before the court without a jury.
Plaintiff was the developer of the large tract, having erected thereon and sold (it asserts) some 160 houses. On a map marked P-2, made by an engineer retained and paid *301 by plaintiff, the above-mentioned area of 2 1/4 acres was assigned no block number, but instead it bore this legend:

"RESERVED FOR PROPOSED SCHOOL AND PLAYGROUND."
The map was approved by the township in November 1950 and filed in February 1953. 50 or 100 copies of it were printed for the use of salesmen  that is, so that they could sell lots from it. In fact one salesman sold 60 lots from it, and another made other sales therefrom. Most of the buyers were young married couples, who were to some extent induced to purchase lots because of the legend and representations made by salesmen that eventually a school would be located in the area stated; a majority of the purchasers were "vitally interested in a school." One of plaintiff's salesmen actually took some purchasers to the place and pointed it out as the site of the school or playground. Apparently too (although there is some dispute over this) a copy of the map hung on the wall of plaintiff's model house and another was kept at the sales office. Without doubt the legend played a part in many sales. In fact a reference to the map was made in six of the deeds given by the plaintiff.
Another map, marked P-3, was prepared on plaintiff's behalf, and in January 1953 it was approved by the township and filed. On it a block number was assigned to the reserved area, and the whole block was cut up into nine lots. Plaintiff, starting in May 1953, has built five one-family houses on this block.
Plaintiff argues that there was never any intention to dedicate the area. In a case of this sort, we are concerned not with intentions that remain unrevealed, but with those that are manifested in words and acts. Haven Homes, Inc., v. Raritan Tp., 19 N.J. 239, 246 (1955). More particularly, we are concerned here with the legend placed on the map by the engineer and with the use made of it by plaintiff's salesmen as a selling point. The trial court rejected as unbelievable all statements and intimations in the record *302 that plaintiff did not know of and consent to the printing of this legend and the salesmen's use of it.
Plaintiff claims that, even if it were to be held responsible for the inscription on the map, nevertheless the very wording of that inscription establishes that no dedication was intended. It argues that the term "reserved" does not indicate a present appropriation of land to public use; it indicates merely a holding back; and that likewise the word "proposed" negatives any present intention to make a dedication. If the word "reserved" stood by itself on the map and that was all there was to establish the dedication, Rosenson v. Bochenek, 102 N.J. Eq. 543, 544 (E. & A. 1928) would be in point. Cf. Cleveland v. Bergen Bldg. & Imp. Co., 55 A. 117 (Ch. 1903). But a notation on a map, that an area is reserved for a specified public purpose, creates an ambiguity. The word "reserved" in this context may merely indicate, depending on the circumstances, that the area has been reserved from the development, that is, not included in it. See Annotation, Ann. Cas. 1916D, 1079, 1080; Kansas City & N. Connecting R. Co. v. Baker, 183 Mo. 312, 82 S.W. 85, 88 (Sup. Ct. 1904).
The question then is what does "Proposed School and Playground" mean. The word "proposed" is also ambiguous. It may in some cases suggest merely a prospective dedication (Brady v. Farley, 193 Md. 255, 66 A.2d 474 (Ct. App. 1949)); City of Brownsville v. West, 149 S.W.2d 1034 (Tex. Civ. App. 1941); or it may suggest that a dedication theretofore made has not yet been accepted. Cf. Mayor and Council of City of Bayonne v. Ford, 43 N.J.L. 292, 294 (Sup. Ct. 1881), which held that the assertion of ownership in an inscription on a map, "Annette Park, now belonging to R. Graves," did not negative the indication that Graves had dedicated the land for a park.
The nearest case in our reports seems to be Atlantic City v. Groff, 68 N.J.L. 670 (E. & A. 1903), where lands were described in a deed as being bounded on "`the intended New York Avenue line.'" The question raised was whether these words indicate a present intention to appropriate land *303 to public use as a street. It was held that though the words were equivocal, they nevertheless constituted one fact, which, with other facts in evidence, was properly submitted to the jury on the question stated.
What, then, are we to say as to the effect of an equivocal inscription, such as that appearing on plaintiff's map? There are dicta to the effect that a dedication cannot be established in the absence of proof disclosing unequivocally an intent to dedicate. Atlantic City v. Groff, supra; Beach Realty Co. v. City of Wildwood, 105 N.J.L. 317, 323 (E. & A. 1929); Mayor of Jersey City v. Morris Canal and Banking Co., 12 N.J. Eq. 547, 562 (E. & A. 1859); George Van Tassel's, etc., Inc. v. Town of Bloomfield, 8 N.J. Super. 524, 528 (Ch. Div. 1950). But as indicated in Atlantic City this seems not to be the law (see at top of page 672 of 86 N.J.L. and second and third full paragraphs thereon, but see first full paragraph); we have no flat rule (such as seems to obtain in some jurisdictions) nullifying all endeavors to dedicate property which are not supported by a clear and unequivocal manifestation of intention. The law of New Jersey has here resisted attempts at an unjust simplicity.
If an inscription on a map or a description in a deed is unequivocal, then the question whether or not there is a dedication is for the court (indeed in certain circumstances the court will find that there is conclusively an intent to dedicate, City of Camden v. McAndrews & Forbes Co., 85 N.J.L. 260, 267 (E. & A. 1913)). But if it is equivocal and an issue is raised on which reasonable minds may differ, the question becomes one of fact to be resolved by the jury or the trier of the fact. Finger v. Doane, 98 N.J.L. 635, 636 (Sup. Ct. 1923); City of Camden v. McAndrews & Forbes Co., 85 N.J.L. 260, 267 (E. & A. 1913); Benjamin R. Fox Co. v. Atlantic City, 99 N.J.L. 420, 421 (E. & A. 1924); cf. Osterweil v. City of Newark, 116 N.J.L. 227, 229, 230 (E. & A. 1936) (disapproving the statement in Soper v. Conly, 108 N.J. Eq. 370, 380 (Ch. 1929), affirmed 107 N.J. Eq. 537 (E. & A. 1931), that to establish a dedication, the proof must be strict, cogent and convincing). Indeed, *304 equivocalities on a map prepared by an alleged dedicator, not only do not serve to prevent a dedication, but (rather the contrary) they are, generally speaking, to be resolved against him and in favor of the public body. Haven Homes, Inc., v. Raritan Tp., 19 N.J. 239, 246 (1955), dealing with the extent of a dedication; 16 Am. Jur., Dedication § 24, dealing with the intent to dedicate. However it should be observed that usually when an issue is raised respecting the intent to dedicate, the court should concern itself with the question whether or not in all likelihood the alleged dedicator had in fact wanted to make a voluntary donation to the public or had reason to represent that he was making such a donation.
In this case, as above indicated, the defendants' claim, that there was a dedication, is based not only on the legend, but also on the use which plaintiff's salesmen made of it as a selling point. Cf. Weger v. Inhabitants of Delran Tp., 61 N.J.L. 224, 226 (E. & A. 1897). A dedication of course need not be made in writing. Cf. Schoenberg v. O'Connor, 14 N.J. Misc. 412, 416 (Sup. Ct. 1935), affirmed 116 N.J.L. 398 (E. & A. 1936). And it may rest on exhibitions of a map to purchasers even though the map is not filed and is not referred to in the purchasers' conveyances. See Clark v. City of Elizabeth, 40 N.J.L. 172, 174 (E. & A. 1878). Indeed, throughout all aspects of this case, we are concerned with a dedication founded not in a grant, but upon an estoppel, that is, upon the premise that men should be held to their representations. See Clark, at page 175; Vanatta v. Jones, 42 N.J.L. 561, 563, 564 (Sup. Ct. 1880).
The proofs adequately support the finding of the trial court that an intent to dedicate was manifested here.
Plaintiff argues next that the acceptance, since the dedication, of the acreage tax paid by plaintiff on the whole of the large tract (except as lots have been conveyed therefrom) estops the defendants township and board of education from making any claim with respect to the 2 1/4 acres on the basis of the dedication. The short answer is that the receipt of taxes on dedicated property does not *305 create any such estoppel against the public authorities, regardless of whether the property is assessed according to acreage or according to lot. Long Branch v. Toovey, 104 N.J.L. 335, 337, 338 (E. & A. 1928); Tweddell v. Village of South Orange, 95 N.J.L. 327, 333 (Sup. Ct. 1921); Dvorin v. City of Bayonne, 111 N.J. Eq. 52, 57 (Ch. 1932). Taxes, of course, are due on the property until the public body accepts the dedication.
Plaintiff claims that the fact that it erected houses on the premises also estops defendants from making any claim on the basis of the dedication. Plaintiff has the burden of establishing the point, but it has said nothing in its brief indicating what acts of the township or the board of education are relied on in this regard. Defendant assumes that plaintiff is relying on the fact that building permits and certificates of occupancy have been issued as to the five houses. The record does not show what official or public body issued the same (though the trial court stated they were issued by the building inspector), nor anything at all as to what were the circumstances under which they were granted. According to defendants, the plaintiff, after representing to purchasers that the area was dedicated, then turned about and renumbered the block on the map marked P-3 in order to deceive the township committee and the building inspector and secure the building permits and certificates of occupancy; and now it seeks to capitalize on that deception by asserting that because of those permits and certificates, defendants are estopped to make any claim on the basis of the dedication. The charge of deception is largely conjectural. On the other hand, the record with respect to plaintiff's claim of estoppel is so nebulous as to compel the conclusion that it has not carried the burden of proof.
Hence we do not get to the points raised by defendants that neither the township, nor a fortiori the board of education, can be estopped, as here contended, by the alleged acts of a building inspector, Seabright v. Central Railroad Co., 73 N.J.L. 625, 631 (E. & A. 1906); Long Branch v. Toovey, 104 N.J.L. 335, 338 (E. & A. 1928); Jantausch *306 v. Borough of Verona, 41 N.J. Super. 89 (Law Div. 1956), and cases cited; and that any claim of the board of education by virtue of the dedication can only be surrendered by formal act in accordance with N.J.S.A. 40:60-32, Osterweil v. City of Newark, 116 N.J.L. 227, 231 (E. & A. 1935), cf. N.J.S.A. 18:7-72, 18:7-73, 18:5-24.1 to 18:5-29, 18:5-43.
Plaintiff's final point is that even if it be conceded that there was a dedication, nevertheless the dedication was in favor of the defendant board of education; that, however, the board cannot accept it because a Board of Education can acquire only a title or a fee simple. N.J.S.A. 18:7-72 is cited. Plaintiff contends that the dedication here, when accepted, passes only a right to the possession and use of the land. Dummer ads Board of Selectmen of Jersey City, 20 N.J.L. 86, 107, 108 (Sup. Ct. 1843).
N.J.S.A. 18:5-24.1 and 18:5-43 are dispositive of the point. We need quote only the former statute:
"The board of education of any school district of the State may accept any gift or grant, whether the same be a gift or grant of land with or without improvement * * *." (Italics added.)
Incidentally, it may be observed that it has been held that a public body, to which land is dedicated under these circumstances, takes "a sort of secondary title in trust." Fessler v. Town of Union, 67 N.J. Eq. 14, 22 (Ch. 1904), affirmed 68 N.J. Eq. 657 (E. & A. 1905). Without stopping to analyze further the rights of a dedicatee, we see no difficulty in holding that the board may accept the dedication here made. There can, of course, be a dedication for purposes of a school and playground by deed (Board of Education of Borough of West Paterson v. Brophy, 90 N.J. Eq. 57, 62 (Ch. 1919)), or otherwise.
As above observed, the board of education has not accepted the dedication here, and questions which have been suggested by the plaintiff, as to what it could do with the property if it did accept the dedication, are not properly before us.
Affirmed.